IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELLEN OUDINOT-ROBERTSON, | Case No. 1:16-cv-00882-JR |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Ellen Oudinot-Robertson brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title XVI Social Security Income and Title II Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, the Commissioner's decision should be reversed and this case should be remanded for further proceedings.

## BACKGROUND

Born in 1955, plaintiff alleges disability beginning August 13, 2012,[1] due to fibromyalgia, depression, headaches, generalized pain, and neck, back, stomach, and vision problems. Tr. 172-82, 193. On December 15, 2014, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled. Tr. 9-19. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 11. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disk disease and osteoarthritis of the lumbar and cervical spines." Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 12.

The ALJ next resolved plaintiff had the residual functional capacity ("RFC") to perform light work, except that:

> [she] is limited to standing or walking up to 4 hours and sitting for up to 6 hours in an 8-hour workday; occasional climbing of ramps, stairs, ladders, ropes or scaffolds; occasional stooping, kneeling, crouching and crawling; frequent, not constant, reaching, handling and fingering with the bilateral upper extremities; and, must avoid concentrated exposure to non-weather related extreme cold, excessive noise, and excessive vibration.

Tr. 13.

---

[1] Plaintiff was 56 years old on the alleged onset date and 61 years old as of the date of this decision. Tr. 172. Accordingly, under the Social Security Act, she was a person of "advanced age" on the date of the ALJ's decision and is now a person "closely approaching retirement age." 20 C.F.R. §§ 404.1563(e), 416.963(e); see also Terry v. Sullivan, 903 F.2d 1273, 1275-76 (9th Cir. 1990) ("it should surprise no one that the [Commissioner] faces a more stringent burden when denying disability benefits to older claimants").

At step four, based on the VE's testimony, the ALJ concluded plaintiff could perform her past relevant work as a secretary. Tr. 18.

## DISCUSSION

This case hinges on whether there is sufficient evidence in the record to establish the presence and extent of plaintiff's alleged fibromyalgia. Specifically, plaintiff argues that the ALJ erred by: (1) not including her fibromyalgia as a medically determinable and severe impairment at step two; (2) neglecting to find that her fibromyalgia equals Listing 14.09D; (3) discrediting her subjective symptom statements concerning limitations associated with her fibromyalgia; (4) mistreating the acceptable medical evidence relating to her fibromyalgia; and (5) rendering an improper step four finding.

## I.     Step Two Finding

Plaintiff asserts the ALJ failed to include fibromyalgia as a medically determinable, severe impairment at step two. At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

Specifically regarding fibromyalgia, a claimant has a medically determinable impairment if an acceptable medical source diagnosed that condition, "reviewed the [claimant's] medical history[,] and conducted a physical exam." SSR 12-2p, available at 2012 WL 3104869. In addition, the acceptable medical source must "provid[e] evidence [described] in section II(A) or section II(B)," which are "generally base[d] on the 1990 American College of Rheumatology (ACR) Criteria." Id. Section II(A) mandates, in relevant part, a history of widespread pain that has lasted for a minimum of 3 months, "[e]vidence that other disorders that could cause the symptoms or signs were excluded," and "[a]t least 11 positive tender points on physical examination." Id.

The medical record before the Court contains multiple references to fibromyalgia, predominantly from plaintiff's treating nurse practitioner, Stephen Joslin. See, e.g., Tr. 265-70, 288-96. Further, an acceptable medical source – i.e., Suzanna Hahn, M.D. – performed testing consistent with SSR 12-2p. Tr. 279-84. Namely, in August 2013, Dr. Hahn reviewed the medical record, conducted a clinical interview, and performed a one-time physical evaluation of plaintiff. Id. Based on this documented medical evidence, including the presence of "12/18 . . . positive" tender points, Dr. Hahn diagnosed plaintiff with fibromyalgia. Id. Accordingly, in September 2013, state agency consulting source Mary Ann Westfall, M.D., reviewed the entire record and concluded that fibromyalgia was a medically determinable, severe impairment. Tr. 81-84.

In assessing fibromyalgia at step two, the ALJ accurately summarized the legal standard and then acknowledged Dr. Hahn's diagnosis. Tr. 11-12. The ALJ nonetheless found that fibromyalgia was not medically determinable because: (1) Dr. Hahn "reviewed a few of

[plaintiff's] past treatment records," as opposed to plaintiff's "complete medical history"; (2) "the medical evidence of record does not show that other disorders which may have caused similar symptoms were excluded"; and (3) Mr. Joslin, who diagnosed plaintiff with fibromyalgia based on multiple positive tender points, is "not an acceptable medical source." Tr. 12. The ALJ did not address or otherwise acknowledge Dr. Westfall's opinion as it relates to fibromyalgia at any step of the sequential evaluation. Tr. 12-18.

The Court finds that the ALJ erred at step two. Initially, comparing the documents listed in Dr. Hahn's report with the record before the Court, it is clear Dr. Hahn reviewed all of the pertinent medical evidence that existed at the time of her evaluation. Compare Tr. 279, with Tr. 252-278. Evidence subsequent to Dr. Hahn's assessment evinces that plaintiff continued to experience significant fibromyalgia-related symptoms. Tr. 288-296, 302, 306-07. Moreover, contrary to the ALJ's suggestion, the plain language of SSR 12-2p does not require the diagnosing acceptable medical source to review every past medical record, especially where, as here, that source generated the only relevant and acceptable medical evidence regarding fibromyalgia. See SSR 12-2p, available at 2012 WL 3104869 ("we may rely on the [examining doctor's] report even if [that person] did not have access to longitudinal evidence if we determine that the [examining doctor's report] is the most probative evidence in the case record").[2]

---

[2] The Commissioner recites portions of the ALJ's RFC analysis to suggest that Dr. Hahn's report is not probative as to plaintiff's fibromyalgia because her "findings are not consistent with examination findings dated prior to and after her examination." Def.'s Resp. Br. 5 (citing Tr. 15). The Commissioner's argument is unpersuasive. Critically, the ALJ did not, in fact, rely on conflicting medical evidence as a basis to reject Dr. Hahn's fibromyalgia diagnosis or her opinion generally. Tr. 11-12, 17-18. In formulating the RFC, the ALJ accepted Dr. Hahn's opinion as "reasonable" because it was consistent with the record as a whole and she "actually examined" plaintiff. Tr. 17-18. Indeed, nothing in the record contradicts Dr. Hahn's

Page 5 - FINDINGS AND RECOMMENDATION

Furthermore, an independent review of the record does not reveal the presence of any other conditions that could account for the majority of plaintiff's symptoms, such as fatigue and generalized pain that waxes and wanes. See, e.g., Tr. 212, 216, 279-80, 292-93; see also SSR 12-2p, available at 2012 WL 3104869 ("the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days"). Significantly, Dr. Hahn documented plaintiff's back and neck pain upon examination – and had access to imaging studies revealing "[m]ultilevel degenerative spondylosis" in the lumbar and cervical spine – but nonetheless diagnosed plaintiff with fibromyalgia (in addition to other spinal impairments). Tr. 277-78, 283. As such, the ALJ's unsupported assertion that the "record does not show that other disorders which may have caused similar symptoms were excluded" is without merit. Tr. 12.

Finally, although the ALJ is correct that Mr. Joslin is not an acceptable medical source, his chart notes are consistent with Dr. Hahn's findings and therefore should have been considered, especially in light of his status as a treating provider. See SSR 12-2p, available at 2012 WL 3104869 (longitudinal treatment evidence, as well as evidence from non-acceptable medical sources, is helpful in determining the existence and severity of fibromyalgia). Likewise, while Dr. Westfall never examined or treated plaintiff, her opinion should have, at least, been accounted for during the ALJ's step two analysis given the dearth of acceptable medical evidence.

---

fibromyalgia findings. Only three medical sources considered this impairment: examining Dr. Hahn, reviewing Dr. Westfall, and treating Mr. Joslin. Mr. Joslin's examination findings concerning fibromyalgia are consistent with Dr. Hahn's (although he endorsed additional functional limitations related thereto based on his longitudinal treating relationship with plaintiff), and Dr. Westfall accepted Dr. Hahn's findings in resolving that plaintiff's fibromyalgia was medically determinable and severe. Tr. 81-84, 267-70, 279-84, 288-96. In sum, as the only examining or treating acceptable medical source, Dr. Hahn's report constitutes "the most probative" fibromyalgia evidence.

Page 6 - FINDINGS AND RECOMMENDATION

Because the ALJ's subsequent evaluation, including the RFC assessment, explicitly did not consider the effects of plaintiff's non-medically determinable impairments, the ALJ's error in rejecting Dr. Hahn's opinion concerning fibromyalgia was not harmless.[3] Tr. 12-19; see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's step two finding should be reversed. As a result, the Court declines to address plaintiff's other allegations of error, as they primarily address how the ALJ's failure to consider fibromyalgia as a medically determinable, severe impairment at step two adversely impacted the ALJ's RFC determination and steps three and four of the sequential process.

## II. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a

---

[3] The Commissioner's reliance on Bruch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) – in support of the proposition that any purported error at step two was harmless – is misplaced. Def.'s Resp. Br. 8-10. Notably, the ALJ in Burch expressly "considered [the allegedly omitted severe impairment at step two] in making his determinations regarding RFC and vocational ability." Burch, 400 F.3d at 681-84. In contrast, the ALJ in the case at bar only examined plaintiff's "**medically determinable impairments** . . . [i]n reaching the conclusion that [she is capable of a limited range of] light work." Tr. 16-18 (emphasis in original). Thus, unlike Burch, the ALJ here excluded all evidence of or pertaining to fibromyalgia in formulating the RFC and at step four and, by extension, utilized plaintiff's subjective reports regarding her fibromyalgia pain symptoms as a means, in part, of discrediting her testimony. Tr. 15-18.

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred at step two. The record before this Court is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling conditions. On the one hand, plaintiff endorsed debilitating symptoms from fibromyalgia and her other impairments, including pain "all the time" and the need to recline five-to-six hours per day. Tr. 34, 44, 236, 244. On the other hand, portions of the record suggest that plaintiff engaged in a wide-slate of daily activities, including: raising her granddaughter (who was six-and-one-half years old at the time of the hearing); occasionally babysitting her two-month-old grandson; assisting her elderly parents with errands, chores, bookkeeping, and companionship "20/30 hours a week"; and cleaning, cooking, shopping, swimming, socializing, and watching television and movies. Tr. 33, 213-17, 293-94.

In light of these ambiguities, further proceedings are required to resolve this case. Therefore, upon remand, the ALJ must evaluate plaintiff's fibromyalgia at step two and perform the subsequent steps of the analytical process, particularly readdressing plaintiff's credibility.

## RECOMMENDATION

For the reasons stated above, the Commissioner's decision should be reversed and this case should be remanded for further proceedings.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 7th day of August 2017.

 s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge